**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RICHARD PIEKUTOWSKI** | : | |
| **Plaintiff** | : | |
| **v.** | : | **3:CV-05-2078** |
| | : | **(JUDGE VANASKIE)** |
| **TOWNSHIP OF PLAINS** | : | |
| **Defendant** | : | |

## MEMORANDUM

Plaintiff Richard Piekutowski commenced the above-captioned action by filing a two-count Complaint against Defendant Township of Plains ("Township") arising from the Township's failure to pay Mr. Piekutowski the value of accumulated, but unused, sick leave. (Dkt. Entry 1-1.)  In count one, Mr. Piekutowski asserts a claim under 42 U.S.C. § 1983, alleging that the Township's failure to pay the value of the total accumulated sick leave, $16,865.40, violated his procedural and substantive due process rights of the Fourteenth Amendment to the United States Constitution.  In count two, Mr. Piekutowski raises a state law breach of contract claim arising from the same events.  The Court has jurisdiction over the § 1983 claim pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3), and supplemental jurisdiction over the breach of contract claim pursuant to 28 U.S.C. § 1367(a).

The Township has moved to dismiss the complaint pursuant to FED. R. CIV. P. 12(b)(1) and (b)(6).  (Dkt. Entry 5.)  For the reasons that follow, the Township's motion to dismiss will be granted with respect to count one, and the Court will decline to exercise supplemental

jurisdiction with respect to the state law claim presented in count two.

## I. BACKGROUND

### A. Factual Background[1]

On or about January 2, 1991, Mr. Piekutowski began working for the Township as its Zoning Officer/Code Enforcement Officer/Building Inspector.  (Compl., Dkt. Entry 1-1, ¶¶ 6-7.)  The Township formally hired Mr. Piekutowski at a meeting of its Board of Commissioners on December 13, 1990.  (Letter from Olszewski to Piekutowski of December 14, 1990, Ex. A to the Compl., Dkt. Entry 1-3.)  The following day, Mr. Piekutowski was notified of the board's decision in a letter from Donald A. Olszewski, the Township Manager (the "Olszewski Letter").  (Id.; Compl., Dkt. Entry 1-1, ¶ 8.)

The Olszewski Letter summarized the terms and conditions of Mr. Piekutowski's employment with the Township.  (Compl., Dkt. Entry 1-1, ¶ 8.)  Among other things, the Olszewski letter stated the salary, hours of employment, holidays, and benefits, and also designated Mr. Piekutowski as an "at will employee."  (Olszewski Letter, Ex. A to the Compl., Dkt. Entry 1-3.)  Important to this matter is item number eight, which provides for sick leave:

   8.    Sick Leave – 15 days per year which can be accumulated up to a
         maximum of 150 days.

---

[1]The factual allegations are presented in Mr. Piekutowski's Complaint, which are accepted as true for purposes of the motion to dismiss.  See Dotzel v. Ashbridge, 438 F.3d 320, 322 (3d Cir. 2006).

(Id.; see also Compl., Dkt. Entry 1-1, ¶ 9.)  The Township, as a matter of policy, allowed other employees to accumulate sick leave.  (Compl., Dkt. Entry 1-1, ¶ 11.)  The Olszewski Letter, however, neither expressly nor implicitly states that Mr. Piekutowski would be entitled to the value of the total accumulated sick leave should his employment with the Township terminate.

Mr. Piekutowski was employed by the Township until May 31, 2005, when he voluntarily retired.  (Id. ¶¶ 7, 18.)  Over the course of his employment, Mr. Piekutowski accumulated 128 days and 5 ½ hours of sick leave.[2]  (Id. ¶ 10.)  On May 31, 2005, Stephen A. Menn, Esquire, the solicitor for the Township, informed Mr. Piekutowski that he had no right to payment for the accumulated and unused sick leave.  (Id. ¶ 12; Letter from Menn to Piekutowski of May 31, 2005, Ex. B to the Compl., Dkt. Entry 1-3.)  Specifically, Mr. Menn advised Mr. Piekutowski:

> [S]ince you are neither a union employee or privately contracted with the Township you have no right to payment for any unused sick leave you did not take before your resignation as Zoning Officer for the Township.  As a result the Township will not be paying you any money for unused sick time you have inquired about.

(Letter from Menn to Piekutowski of May 31, 2005, Ex. B to the Compl., Dkt. Entry 1-3.)

Insisting he was entitled to full payment of the value of the accumulated sick leave, Mr.

---

[2]Although the Complaint alleges Mr. Piekutowski accumulated 128 days and 5 ½ hours of sick leave, the letter sent by his attorney to the Township demanding payment of the value of the accumulated sick leave states that Mr. Piekutowski accumulated 120 days and 5 ½ hours of sick leave.  (Letter from Phillips to Menn of June 8, 2005, Ex. C to the Compl., Dkt. Entry 1-3.) For purposes of the motion to dismiss, the figure alleged in the Complaint will be accepted as true.

Piekutowski, through his attorney, demanded immediate payment of $16,865.40.  (Letter from

Phillips to Menn of June 8, 2005, Ex. C to the Compl., Dkt. Entry 1-3; Compl., Dkt. Entry 1-1, ¶¶

13, 15.)  The Township refused, (Compl., Dkt. Entry 1-1, ¶ 14), and this action followed.

### B. Procedural Background

Mr. Piekutowski filed a two-count Complaint in this Court on or about October 12, 2005.

In count one, Mr. Piekutowski alleges that, at the time of his retirement, he had a vested

property right in the value of the total accumulated sick leave.  (Id. ¶ 18.)  Mr. Piekutowski

contends that the Township deprived him of the value of the sick leave "knowingly, willfully, and

without notice, hearing, or court adjudication," (id. ¶ 19), and that the Township's actions were

"arbitrary, capricious, and without support in fact or law." (Id. ¶ 20).  Mr. Piekutowski claims the

Township's actions infringed upon his procedural and substantive due process rights under the

Fourteenth Amendment to the United States Constitution.

In count two, Mr. Piekutowski asserts a state law breach of contract claim.  He alleges

that the terms and conditions of employment obligated the Township to pay the value of the

total accumulated sick leave at the time of his retirement.  (Id. ¶¶ 27-28.)

The Township has moved to dismiss the Complaint pursuant to FED. R. CIV. P. 12(b)(1)

and (b)(6).  (Dkt. Entry 5.)  The Township argues count one fails to state a claim upon which

relief can be granted because Mr. Piekutowski did not have a property interest in the value of

the accumulated sick leave and, as such, the refusal to pay the same cannot violate his

4

procedural or substantive due process rights.  The Township argues count two fails to state a claim upon which relief may be granted because the Olszewski Letter did not obligate the Township to pay the value of the accumulated sick leave.  The Township's motion has been fully briefed and is ripe for disposition.

## II. DISCUSSION

### A. Standard for Rule 12(b)(6) Motion to Dismiss

In considering a motion to dismiss under FED. R. CIV. P. 12(b)(6), the Court must accept as true all well-pled facts, as well as all reasonable inferences drawn therefrom.  Javorski v. Nationwide Mut. Ins. Co., No. 3:06-CV-1071, 2006 WL 2225851, at *7 (M.D. Pa. Aug. 2, 2006). A motion to dismiss under Rule 12(b)(6) should only be granted where "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id. at *6 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  The moving party bears the burden to establish the absence of an actionable claim.  Id. at *7 (citing Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980)).

### B. Due Process Claim

Mr. Piekutowski alleges that he had a vested property interest in the accumulated sick leave such that, at the moment of his retirement, he was entitled to the value of the accumulated sick leave.  By refusing to pay this amount to Mr. Piekutowski, the Township denied him procedural due process – he suffered a deprivation of his vested property interest

5

without notice and opportunity to be heard – and denied him substantive due process – the

Township's refusal to pay the value of the accumulated sick leave was arbitrary and capricious.

The Township argues there was nothing in the Olszewski Letter suggesting that Mr.

Piekutowski was entitled to be paid the value of the accumulated sick leave.  Since Mr.

Piekutowski did not have a property interest in the value of the accumulated sick leave, the

Township's decision not to pay Mr. Piekutowski did not contravene the protections of the due

process clause.

      The Fourteenth Amendment to the United States Constitution provides: "No State shall

. . . deprive any person of life, liberty, or property, without due process of law."  U.S. CONST.

amend. XIV, § 1.   The due process clause has a procedural and substantive component.  See

Troxel v. Granville, 530 U.S. 57, 65 (2000); Nicholas v. Pa. State. Univ., 227 F.3d 133, 138-39

(3d Cir. 2000).  Because Mr. Piekutowski's due process claim is premised on both components,

each will be addressed separately.

### 1. Procedural Due Process

      "To state a claim under § 1983 for deprivation of procedural due process rights, a

plaintiff must allege that (1) he was deprived of an individual interest that is encompassed

within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the

procedures available to him did not provide 'due process of law.'"  Hill v. Borough of Kutztown,

455 F.3d 225, 233-34 (3d Cir. 2006). The threshold inquiry is whether Mr. Piekutowski enjoyed

a property interest in the value of the accumulated sick leave worthy of constitutional protection.

Plaintiff argues that a protected property interest arises from what he asserts to a contractual entitlement to the value of accumulated sick leave.  Assuming for purposes of this motion only that he had a contractual right to compensation for the value of unused leave, however, it does not follow that the contractual entitlement is protected by the Fourteenth Amendment such that a hearing had to be conducted before a decision was made to refuse to make payment.

As our Court of Appeals has observed, not all property interests created by contract are clothed with constitutional protection.  See, e.g., Boyd v. Rockwood Area Sch. Dist., 105 Fed. Appx. 382, 386 (3d Cir. 2004); Linan-Faye Constr. Co. v. Hous. Auth. of City of Camden, 49 F.3d 915, 932 (3d Cir. 1995); Unger v. Nat'l Residents Matching Program, 928 F.2d 1392, 1397 (3d Cir. 1991).  In Unger, plaintiff, a physician, applied for admission into a dermatology program at various medical schools.  Unger, 928 F.2d at 1393.  Plaintiff participated in the National Residents Matching Program, which matches students and medical schools based upon their preferences.  Id.  The Matching Program ultimately matches one student with one school and conditions participation by requiring each student and school to be bound by the results.  Id.  Plaintiff in Unger was accepted into Temple University Hospital's dermatology program on October 5, 1988, but was subsequently informed on February 10, 1989, that she could not begin her dermatology studies because the university decided to terminate its

program.  Id.  Since plaintiff was bound by the Matching Program's results, the unexpected

discontinuation of the dermatology program left plaintiff scrambling for other options.  Plaintiff

filed suit against the university, alleging denial of procedural due process because of the

termination.  Id. at 1394.  Plaintiff argued that a contract between the university and herself

resulted from her participation in the Matching Program.  Id. at 1397.  The district court granted

the university's motion to dismiss under FED. R. CIV. P. 12(b)(6).  Id. at 1394.

On appeal, the Third Circuit affirmed.  The court began its analysis with the principle that

a contract with a government entity may create a property right entitled to protection under the

Fourteenth Amendment.  Id. at 1397.  "[T]he Supreme Court," however, "has never held that

every state contract gives rise to a property interest protected under the Fourteenth

Amendment."  Id. (emphasis added).  The court's role was to draw the line of demarcation

between contracts creating protectable rights and those that do not.  In this regard, the court

found instructive decisions from sister circuits that have differentiated among contractual rights

warranting due process protection.  See id. at 1398-99 (citing S & D Maint. Co. v Goldin, 844

F.2d 962 (2d Cir. 1988); Yatvin v. Madison Metro. Sch. Dist., 840 F.2d 412 (7th Cir. 1988); San

Bernardino Physicians' Med. Group, Inc. v. County of San Bernardino, 825 F.2d 1404 (9th Cir.

1987); Boucvalt v. Bd. of Comm'rs., 798 F.2d 722 (5th Cir. 1986); Bleeker v. Dukakis, 665 F.2d

401 (1st Cir. 1981)).  The court drew the following conclusion from these rulings:

> [These] courts have observed that if every breach of contract by someone
> acting under color of state law constituted a deprivation of property for

procedural due process purposes, the federal courts would be called upon to pass judgment on the procedural fairness of the processing of a myriad of contractual claims against public entities. We agree that such wholesale federalization of state public contract law seems far afield from the great purposes of the due process clause.

Id. at 1398 (citation omitted). From these cases, the court in Unger articulated two general types of contract rights constituting property interests protected by due process. The first type of contract confers a protected status, which is characterized by extreme dependence, permanence, or both. Id. at 1399 (quoting S & D Maint. Co., 844 F.2d at 966). The second type "arises where the contract itself includes a provision that the state entity can terminate the contract only for cause." Id. (citing S & D Maint. Co., 844 F.2d at 967).

Plaintiff in Unger had neither contract right. She did not allege that the hospital could cancel the dermatology program only for cause. Id. Furthermore, her complaint alleged no facts suggesting a protected status; to the contrary, plaintiff was a licensed physician who sought further specialization within a field of medicine. The interest at stake, though important to plaintiff, was characterized by neither extreme dependence nor permanence. Id. "[Plaintiff's contract] is one of many contracts with state entities whose alleged breach does not support an action under [§ 1983]." Id. Therefore, plaintiff's complaint was dismissed.

The court has relied on Unger in subsequent cases. In Linan-Faye Const., plaintiff was awarded a contract by defendant housing authority to renovate and rehabilitate over two hundred housing units. 49 F.3d at 917. Numerous disputes broke out among the parties over

9

interpretation of the contract specifications, and eventually defendant terminated the contract. Id. at 917-18.  Plaintiff filed suit, raising claims under § 1983 and state contracts law.  The court affirmed the district court's order granting summary judgment to defendant on the § 1983 claim. Plaintiff could not assert a property interest that was protected by the Fourteenth Amendment because the contract did not confer a protected status on plaintiff, and defendant could terminate the contract for reasons other than for cause (such as "for convenience").  Id. at 932.

In Boyd, plaintiffs were retirees covered under a collective bargaining agreement that, in part, provided that plaintiffs were entitled to health care coverage with a certain provider or "'equivalent insurance coverage with some other responsible insurance carrier.'"  105 Fed. Appx. at 383.  Subsequent to plaintiffs' retirement, the school district and teachers' union renegotiated the collective bargaining agreement and, among other things, changed the health insurance plan.  Plaintiffs claimed that the change in health care benefits deprived them of a protected property interest.  Id. at 384.  The district court granted defendants' motion to dismiss, and the Third Circuit affirmed.  Reiterating its previous statements that not every public contract creates protectable property interests, the court concluded the collective bargaining agreement did not fall within either of the two categories of contracts delineated in Unger.  Id. at 386.  There was nothing in the collective bargaining agreement that limited defendants' ability to change the health insurance plan only for cause.  And, unlike other property interests, such as welfare benefits, which result in extreme dependence by the recipient thereon for "day-to-

day survival," plaintiffs here did not allege "that their day-to-day survival has been threatened by the 'reduction' in coverage under the new collective bargaining agreement."  Id.  See also Chenvert v. DeJohn, No. 98-111 GMS, 2000 WL 1728257, at *4-5 (D. Del. Apr. 11, 2000) (claimed "'property interest in the difference between his actual 1996-97 and 1997-98 salaries and those he should have received under the Administrative Salary Schedule for those fiscal years'" is not encompassed by the Unger categories).

Like the contracts in Unger, Linan-Faye Const., Boyd, and Chenvert, there is nothing in the Olszewski Letter that limits the Township's ability to terminate the contract only for cause. Furthermore, the Olszewski Letter did not confer a protected status upon Mr. Piekutowski in providing annual sick leave and the right to accumulate unused sick leave.  Contracts conferring a protected status are characterized by qualities of extreme dependence, permanence, or both.  These qualities contemplate, among other things, welfare benefits, tenured employment, or social security benefits.  See Unger, 928 F.2d at 1399.  The accumulated sick leave lacks the permanence of tenured employment.  Nor does the sick leave resemble welfare benefits, which, "[f]or qualified recipients, . . . provides the means to obtain essential food, clothing, housing, and medical care."  Goldberg v. Kelly, 397 U.S. 254, 264 (1970).  Like plaintiffs in Boyd, Mr. Piekutowski has not alleged that his "day-to-day survival" is threatened by the Township's failure to pay the value of the accumulated sick leave.  Mr. Piekutowski's claim is analogous to the disgruntled contractor in Linan-Faye Const. who sued

for damages when defendant terminated the renovation contract, or plaintiff in <u>Chenvert</u> who alleged his contract provided for a higher salary than he actually received.  In other words, Mr. Piekutowski's Complaint raises nothing more than an ordinary breach of contract claim.  To indulge Mr. Piekutowski's § 1983 claim on this basis would result in the unacceptable "wholesale federalization of state public contract law."  As such, Mr. Piekutowski does not have a property interest protected by the procedural safeguards of the Fourteenth Amendment.[3]

Mr. Piekutowski argues that he retired in reliance upon the Township's alleged representations that he would receive payment for the accumulated sick leave.  (Supplement Br. in Opp'n to Mot. to Dismiss of Def., Dkt. Entry 18-1, at 8-9.)  He points to the court's discussion in <u>Boyd</u> regarding the voluntariness of retirement.  In <u>Boyd</u>, plaintiffs argued their interest in <u>continued employment</u> was protected because they agreed to early retirement on the belief that their health care benefits would remain the same or increase.  <u>Boyd</u>, 105 Fed. Appx.

---

[3]The Court's decision today is buttressed by federal courts outside of this circuit which have held that employment benefits, including sick leave, are not property interests protected by the Constitution.  See, e.g., <u>Johnson v. Milwaukee County</u>, No. 04-C-242, 2006 WL 272754, at *4 (E.D. Wis. Feb. 1, 2006) (granting motion to dismiss plaintiff's procedural due process claim where plaintiff merely asserts property interests in sick leave and vacation time; "[Plaintiff] does not have a property interest, for purposes of a due process claim, in his sick leave time or his vacation time."); <u>Diederich v. County of Rockland</u>, 999 F. Supp. 568, 573 (S.D.N.Y. 1998) (rejecting takings claim alleging "loss without compensation of vacation time, personal, holiday, and sick leave time accruals, and retirement credit"); <u>Spencer v. City of Elkhart</u>, No. 3:91-CV-227RP, 1995 WL 358819, at *17 (N.D. Ind. Apr. 26, 1995) ("[Plaintiff]'s further claim that she was deprived of certain benefits associated with her employment, such as pay, insurance and sick time, is likewise without merit.").

at 385.  They contended that the subsequent change in health insurance plans resulted in a

deprivation of due process.  The court stated that retirement decisions are presumed to be

voluntary, and the "presumption can be overcome by evidence of coercion or misrepresentation

of facts material to the retirees' decision."  Id.  The court rejected plaintiffs' argument of

involuntary retirement because the collective bargaining agreement itself stated that the health

insurance plan could be changed provided the substitute was equivalent to the current

coverage.  Id.  The crucial distinction between plaintiffs' argument in Boyd and Mr.

Piekutowski's position, however, is that the former was based upon a protected property

interest in the employment itself, and Piekutowski's employment was not entitled to such

protection.  He was an "at will" employee, and thus cannot claim a property interest in continued

employment.  Thus, regardless of whether Mr. Piekutowski retired because of his reliance upon

the Township's representation that he would be paid the value of the accumulated sick leave,

such reliance does not elevate his property interest to constitutionally-protected status.

In any event, even if Mr. Piekutowski's property interest is protectable, due process is

satisfied by the availability of a post-deprivation breach of contract action in state court.  See

Ramsey v. Bd. of Educ., 844 F.2d 1268 (6th Cir. 1988).  In Ramsey, a Kentucky statute

permitted local school boards to compensate retiring teachers for accumulated and unused sick

leave.  Id. at 1270.  At the time of plaintiff's retirement, her sick leave cards disclosed 142 days

of unused sick leave.  Id. at 1271.  However, the school board notified plaintiff that her

accumulated sick leave days were reduced to 29 days in accordance with a new school policy, thereby reducing her total compensation.  Id.  Plaintiff filed suit alleging the school board's elimination of accumulated sick leave deprived her of property without due process.

The court first held that plaintiff had a constitutionally protected property interest in the sick leave days because of the Kentucky statute and the recording of her accumulated sick leave days on her sick leave cards.  Id. at 1272.  The court then turned its attention to determining what process is due.  In making this determination, the court considered several factors articulated by the Supreme Court:

> the nature of the property interest involved (particularly its importance to the individual possessing it); the risk of an erroneous deprivation caused by inadequate procedures designed to safeguard the interest; the value, if any, that additional procedures might provide; and the state's burden in having to provide additional procedures.

Id. (citing Mathews v. Eldridge, 424 U.S. 319, 334-35 (1984)).  Before applying the factors, the court noted the overriding consideration is the requirement of an opportunity to be heard at a meaningful time and in a meaningful manner, which the Supreme Court has held can be satisfied in some cases by a post-deprivation hearing in state court.  Id. (citing Hudson v. Palmer, 468 U.S. 517, 533 (1984); Parratt v. Taylor, 451 U.S. 527, 543-44 (1981), overruled on other grounds by, Daniel v. Williams, 474 U.S. 327 (1986); Ingraham v. Wright, 430 U.S. 651, 677 (1977)).  Although the Supreme Court's decisions to this effect involved deprivations capable of being remedied by a state tort action, the court in Ramsey extended this logic to

14

deprivations involving a breach of contract where state contract law provides an adequate remedy.[4]  Id. at 1273.  This reasoning makes sense because the property interest at stake is created by the "state common law of contracts," and this same law provides the remedy for the breach and resulting deprivation.  Id.

The court's conclusion was supported by its application of the Mathews factors.  First, though plaintiff's interest in her accumulated sick leave and compensation therefor upon retirement was important to her, that interest paled in comparison to her interest in continued employment, which was not taken from her.[5]  Id. at 1274.  Second, any risk of an erroneous deprivation would not be mitigated by a pre-deprivation hearing because the school board would have eliminated her sick leave days anyway since it determined she had no right to those

---

[4]In Lujan v. G & G Sprinklers, Inc., a state statute permitted a public body to withhold payments under a public contract when the public body determined the contractor violated provisions of the contract or other law, such as prevailing wage statutes.  532 U.S. 189, 191-92 (2001).  The statute also provided that the contractor may bring suit against the public body for breach of contract for withholding payments due under the contract.  Id. at 192-93.  The Court held that a contractor's property interest in a claim for payment can be protected by a breach of contract action: "[I]f California makes ordinary judicial process available to respondent for resolving its contractual dispute, that process is due process."  Id. at 196-97.

[5]The distinction between these two interests is underscored by the court's discussion of the adequacy of state contract law remedies.  "[T]he tenured employee who loses his or her position by a premature breach of contract has suffered the loss of a property interest that, because of its special nature, is neither easily defined nor easily compensated by a typical breach of contract action."  Ramsey, 844 F.2d at 1274.  By contrast, "an employee deprived of a property interest in a specific benefit, term, or condition of employment, suffers a loss which is defined easily . . . and therefore, any interference with that interest is redressed adequately in a state breach of contract action."  Id.

days.  Id.  Lastly, requiring a hearing before the state adjusted an employee's benefits would impose an onerous burden upon the state that would return little, if any, additional benefit beyond that provided by a state court breach of contract action.  Id.  Consequently, while plaintiff had a constitutionally protected property interest, a "section 1983 action is an inappropriate vehicle to redress what is merely a breach of contract claim by [plaintiff] against the [school board]."  Id.  See Phillips v. Bd. of Comm'rs., No. 3:CV-06-897, 2006 WL 2504026, at *1 (M.D. Pa. Aug. 28, 2006) (applying Ramsey to conclude plaintiffs' claim that defendant deprived them of their accumulated sick leave and severance pay should be redressed by a state court breach of contract action).

Ramsey's reasoning is persuasive and dispositive of Mr. Piekutowski's claim.  Mr. Piekutowski has failed to demonstrate why a common law breach of contract action in state court, as opposed to a § 1983 action in federal court, will not provide an adequate remedy to a garden variety contract dispute.  Mr. Piekutowski's claimed loss – valued at $16,865.40 – is easily defined and can be compensated in state court.  Like Ramsey, Mr. Piekutowski's interest, undoubtedly important to him, does not rise to the constitutional level of, for instance, his interest in continued employment.  The risk of erroneous deprivation would not be reduced by a pre-deprivation hearing because the Township made clear in the correspondence from Mr. Menn to Mr. Piekutowski that the latter had no right to payment for the accumulated and unused sick leave.  Moreover, the burden imposed on the Township in requiring a pre-

deprivation hearing would be disproportionate to the slight benefit Mr. Piekutowski would enjoy beyond that accompanying a state court action.  Therefore, Mr. Piekutowski's procedural due process claim is not cognizable.

### 2. Substantive Due Process

Mr. Piekutowski also alleges that the Township's failure to pay him the value of the accumulated unused sick leave was arbitrary and capricious government action, in violation of his substantive due process rights.  The Township argues that Mr. Piekutowski did not have a property interest entitled to substantive due process protection.

Like his procedural due process claim, Mr. Piekutowski's substantive due process claim requires a threshold showing that he has a property interest protectable under the Fourteenth Amendment's due process clause.  Hill v. Borough of Kutztown, 455 F.3d 225, 234 n.12 (3d Cir. 2006); Nicholas v. Pa. State Univ., 227 F.3d 133, 139-40 (3d Cir. 2000).  However, while state-created contract rights may be afforded the protections of procedural due process, "'not all property interests worthy of procedural due process protection are protected by the concept of substantive due process.'"  Nicholas, 227 F.3d at 140 (quoting Reich v. Beharry, 883 F.2d 239, 244 (3d Cir. 1989)).  "[W]hether a certain property interest embodies this 'particular quality' is not determined by reference to state law, but rather depends on whether that interest is 'fundamental' under the United States Constitution."  Id.

In Nicholas, the court was confronted with the issue of whether plaintiff had a

17

fundamental property interest in <u>tenured</u> public employment.  In answering this question in the negative, the court noted its reluctance to broaden substantive due process protection to encompass anything but the most fundamental property interests.  <u>Id.</u> at 141.  In this regard, the Third Circuit considered it significant that tenured public employment was entirely a state-created contract right sharing few similarities with property interests deemed fundamental under the Constitution.  <u>Id.</u> at 143.  The Third Circuit has rejected other attempts to widen the scope of substantive due process protection.  <u>See, e.g.</u>, <u>Indep. Enters. Inc. v. Pittsburgh Water & Sewer Auth.</u>, 103 F.3d 1165, 1180 (3d Cir. 1997) (low bidding contractor's claim of entitlement to public construction contract); <u>Reich</u>, 883 F.2d at 243-45 (payment for professional services rendered pursuant to a contract).

If tenured public employment is not within the category of property interests that may sustain a substantive due process claim, it necessarily follows that the value of unused sick leave does not rise to the quality of property interest that deserves such protection.  Plaintiff has pointed to nothing in the text of the Constitution, or this nation's history, that justifies the conclusion that a property interest in accumulated sick leave is a fundamental right.  The property interest at stake here is a state-created contract right analogous to a right of payment for services rendered that was determined in <u>Reich</u> to not be fundamental.  Accordingly, Mr. Piekutowski has failed to allege the deprivation of a fundamental property interest and, as such, the Township's motion to dismiss the substantive due process claim will be granted.

**B. Breach of Contract Claim**

In light of the dismissal of Mr. Piekutowski's § 1983 claims, it is appropriate to consider whether supplemental jurisdiction over the remaining state law breach of contract claim should be declined.  See 28 U.S.C. § 1367(c)(3).  "After dismissal of all federal claims, a district court may decline to exercise supplemental jurisdiction over the remaining state law claims if it finds that the parties will not be prejudiced and that the interests of judicial economy would be served."  Breiner v. Litwhiler, 245 F. Supp. 2d 614, 635 (M.D. Pa. 2003).  "'This decision is committed to the sound discretion of the district court.'"  Id. (quoting Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 444 (3d Cir. 1997), cert. denied sub nom. Baughans, Inc. v. Domino's Pizza, Inc., 523 U.S. 1059 (1998)).

In this case, it does not appear that Mr. Piekutowski will suffer any prejudice if the state law claim is not retained by this Court.  Furthermore, pursuit of this claim in Luzerne County (where Mr. Piekutowski resides and the Township is located) will be more convenient for the parties.  Therefore, the Court will decline to exercise supplemental jurisdiction over Mr. Piekutowski's contract claim.

**III. CONCLUSION**

Mr. Piekutowski does not present a viable procedural or substantive due process claim arising out of the Township's refusal to pay accumulated sick leave.  Consequently, the Township's motion to dismiss will be granted and the due process claim will be dismissed.

Furthermore, the Court declines to exercise supplemental jurisdiction over the remaining state law breach of contract claim, which will be dismissed without prejudice.  An appropriate Order follows.


**s/ Thomas I. Vanaskie**
Thomas I. Vanaskie
United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD PIEKUTOWSKI        :
           **Plaintiff**      :
    **v.**            :     3:CV-05-2078
                         :     **(JUDGE VANASKIE)**
**TOWNSHIP OF PLAINS**        :
           **Defendant**    :

### ORDER

**NOW, THIS 9th DAY OF NOVEMBER, 2006,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1.  Defendant's Motion to Dismiss (Dkt. Entry 5) Count One of the Complaint is **GRANTED,** and Count One is **DISMISSED WITH PREJUDICE.**

2.  Count Two of Plaintiff's Complaint (Dkt. Entry 1-1) is **DISMISSED WITHOUT PREJUDICE**.

3. The Clerk of Court is directed to mark this action **CLOSED.**

 

**s/ Thomas I. Vanaskie**
Thomas I. Vanaskie
United States District Judge